## A08A0437. WALLACE v. NOBLE VILLAGE AT BUCKHEAD SENIOR HOUSING, LLC.
### (664 SE2d 292)

BARNES, Chief Judge.

Under OCGA § 9-15-14, the trial court imposed sanctions against Jannett Wallace and her counsel for filing suit against the wrong defendant. We granted Wallace's application for discretionary review of that order directing that she and her counsel pay $40,217 in attorney fees and costs, and for the reasons that follow, we reverse.

According to Wallace's complaint, she was wheelchair-bound due to multiple sclerosis and on October 24, 2001, began residing at a personal care home, also known as an assisted living facility, known as Winthrop at Buckhead. State regulations required the facility to provide Wallace with "protective care and watchful oversight," and to respond to her immediate and emergency needs. Ga. Comp. R. & Regs. r. 290-5-35-.12 (1) (2008). Wallace paid $2,150 per month in 2003 for residential housing and services that included assistance with dressing, wheelchair transfers, and use of bathroom facilities.

According to her complaint, on December 31, 2003, facility staff members dropped Wallace while transferring her from her bed to her wheelchair. As a result, Wallace suffered a broken femur. Despite her distress, the staff of the facility allegedly neglected her medical needs for eight days. On January 7, 2004, her son visited her, immediately recognized that she was in obvious pain, and took her to the emergency room where her femur fracture was diagnosed.

At some point during 2004, the facility changed its name to Noble Village at Buckhead Senior Housing, LLC (Noble Village). Wallace received no notice of a change in ownership and the staff remained the same. Before filing suit in 2005 against the facility owner, Wallace's counsel, Andrew Lampros, sent a records request to Noble Village requesting a copy of all its records relating to Wallace. Noble Village complied, sending Lampros 14 pages of documents regarding Wallace. Lampros also sought and obtained records from the Department of Human Resources (DHR) that included two Personal Care Home Provisional Permits with the same number issued to both Noble Village and to JSDD, LLC, as well as a

"Statement of Deficiencies and Plan of Correction (Inspection Report)" issued by DHR to "Noble Village at Buckhead" on January 30, 2004. Lampros testified that DHR

> provided me a copy of a Statement of Deficiencies and Plan of Correction (Inspection Report) that names Noble Village at Buckhead as the "Provider or Supplier" for the facility located at 5455 Glenridge Drive in Atlanta . . . dated January 30, 2004, which is nine (9) months before the date which defense counsel [subsequently] told me that Noble Village had anything to do with the facility.

Lampros further testified that DHR supplied him with another report dated February 18, 2004, that also named Noble Village as the provider or supplier located at that same address, the importance of that date being that Wallace was injured in January 2004 at that location.

Wallace filed suit against Noble Village on February 10, 2005. Lampros testified that defense counsel called him on March 7, 2005, and indicated that Noble Village was not responsible for this incident in January 2004 because it did not own or operate the facility until September 2004, when it purchased it from JSDD, LLC. Lampros responded with a letter to counsel requesting "proper documents that expressly provide that your client is not a successor or continuation of JSDD." Defense counsel left a voicemail the next day, March 8, 2005, indicating she did not represent Noble Village, to which Lampros responded by letter that after receiving this message, defense counsel's paralegal had contacted him and requested another copy of a pleading. Based on their conversation the previous day, Lampros forwarded courtesy copies of all pleadings.

A few days later, Noble Village sent Lampros a copy of a faxed document titled "Assignment and Assumption of Interest in Leases" between JSDD, LLC, as assignor and Noble Village at Buckhead Senior Housing, LLC, as assignee, in which Noble Village agreed to assume liabilities arising only on or after the sales date. The leases to be assigned were listed on Exhibit B, which was not included. The copy included multiple undated un-notarized signature pages executed by individuals on behalf of six corporate entities, whose relationships are not apparent. The document also referred to a September 4, 2004 agreement between assignor JSDD to sell real property to assignee's "predecessor in interest," AEW Senior Housing Company, LLC, but a copy of that agreement was also not included in the documents sent to Lampros. Defense counsel also sent a page from the Secretary of State's website indicating that JSDD was still an active company, concluding that Noble Village had

provided documents establishing it was not liable and that Lampros should dismiss the complaint before it had to file an answer and seek attorney fees from him and his client.

Besides being incomplete, the documents included no affidavit verifying their contents, and Lampros responded by noting that dismissal was unwarranted because the contract was neither complete nor competent. Noble Village responded by reiterating that it had provided sufficient documentation and asserting that it would seek fees and costs under OCGA § 9-15-14 if Lampros did not dismiss it from the suit within three days. Lampros responded that he could not dismiss based on counsel's oral representations without "complete or competent documents."

On March 17, 2005, Noble Village sent Lampros additional documents, including a Bill of Sale and a Purchase and Sale Agreement which included multiple undated, un-notarized signatures from individuals on behalf of various corporate entities which varied from those on the lease assignment. The document was not authenticated by affidavit of any party or record keeper.

On March 21, 2005, Noble Village answered, denying liability, cross-claimed against JSDD for indemnification, and counterclaimed against Wallace for fees and costs under OCGA § 9-15-14. On April 7, 2005, Noble Village moved for summary judgment on the ground that it did not assume the liabilities and obligations of JSDD when it purchased the assisted living facility. In support of its motion, Noble Village for the first time included affidavits verifying the documents. Christopher Kazantis, the "Vice President of Seaport Senior Housing Management LLC, Managing Member of AEW Senior Housing Company, LLC, which is a member of Noble Village of Buckhead Senior Housing, LLC" stated that JSDD agreed to sell its personal care facility to AEW Senior Housing on September 15, 2004, and identified the parties' attached Purchase and Sale Agreement. The manager of Gary Holding Estates, LLC, which is a member of Noble Village at Buckhead Senior Housing, LLC, confirmed that the closing date of Noble Village's asset purchase took place on October 28, 2004, and identified Wallace's lease as well as the Assignment and Assumption of Interest in Leases between JSDD and Noble Village.

On May 9, 2005 Wallace responded to Noble Village's motion for summary judgment by dismissing her claim against it. Realizing she needed the court's permission to dismiss the claim against Noble Village because the case would remain pending against the other defendants, she moved to dismiss the claim against Noble Village on May 10, 2005. On June 7, 2005, Noble Village objected to Wallace's motion to dismiss without prejudice, arguing it was entitled to a dismissal with prejudice, and moved for attorney fees and expenses

per OCGA § 9-15-14. On June 13, 2005, the trial court granted her motion and dismissed the complaint without prejudice.

While the trial court initially denied Noble Village's motion for fees and costs on August 22, 2005, for failing to appear at a scheduled hearing, the court set aside that order in January 2006 after Noble Village argued that it had not received notice of the hearing. At the end of a hearing on April 12, 2006, at which both parties appeared and argued, the trial court granted the motion. When the trial court asked defense counsel how much she was seeking, she responded that she had claimed $21,640.50 in her motion. The court responded, "That's excessive," and set the matter for another hearing.

In its order granting the motion as to liability, the court found "that the claims alleged by Plaintiff against Noble Village and the positions taken by Plaintiff, as well as Plaintiff's counsel, Andrew Lampros, against Noble Village, had no factual merit and presented no justiciable issue of law." At the second fee hearing on May 25, 2006, defense counsel submitted records and an affidavit and testified that Noble Village had incurred $40,217 in fees and costs to date.

On July 10, 2006, the trial court issued an order awarding that sum to Noble Village against both Wallace and her lawyer Lampros. In assessing attorney fees, the trial court faulted Wallace for not accepting the defense counsel's representation and documentation that Noble Village was not a proper party. The court found as a fact that before the deadline to file an answer, defense counsel "made numerous attempts via telephone and in writing to provide Plaintiff and Plaintiff's counsel with information, documentation and case law establishing that Noble Village was not a proper party to the action," but was still required to file an answer, respond to discovery, and move for summary judgment. The court continued by finding that, in all the claims asserted "throughout the entirety of this litigation, . . . there was such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept Plaintiff's asserted claims and positions." Finally, the court found that Wallace and Lampros brought this action "while lacking substantial justification, . . . interposed [it] for delay or harassment," and unnecessarily expanded the litigation.

OCGA § 9-15-14 authorizes the assessment of litigation costs and attorney fees for frivolous actions and defenses. The standard of review for awards under subsection (a), for claims made despite a complete absence of any justiciable issue of law or fact, is the "any evidence" rule, and the standard of review for motions under subsection (b), for actions lacking substantial justification or interposed for delay or harassment, or unnecessarily expanding the proceedings, is the "abuse of discretion" rule. *Slone v. Myers*, 288

Ga. App. 8, 14 (5) (653 SE2d 323) (2007); *Gibson v. Southern Gen. Ins. Co.*, 199 Ga. App. 776, 778 (3) (406 SE2d 121) (1991).

But here, no evidence supports the trial court's finding that the claims were made despite a complete absence of a justiciable issue. To the contrary, the record contains documents provided by non-party DHR before suit was filed that indicate that Noble Village was operating the facility when Wallace was injured, long before JSDD sold the facility in October 2004. Wallace filed suit on February 10, 2005, and dismissed Noble Village less than three months later on May 9, 2005. Moreover, the trial court abused its discretion in finding that Wallace and Lampros met every one of the requirements for subsection (b) — lacking substantial justification, interposing for delay or harassment, unnecessarily expanding the proceedings — because despite defense counsel's representations and documentation indicating that Noble Village was the wrong defendant, Wallace's lawyer had a duty to inquire further for competent evidence to determine whether the representations were correct and the documents were competent. As is clear from the record, defense counsel did not present admissible evidence and complete contracts until filing the motion for summary judgment, after which Wallace dismissed the suit.

The record contains no evidence that Wallace sued Noble Village for purposes of delay, harassment, or unnecessary expansion of litigation, and Noble Village has not cited any such evidence. Other than mistakenly filing suit against an improper party based upon information supplied by DHR, Wallace's counsel engaged in no sanctionable conduct. To impose sanctions against Wallace and her counsel in these circumstances is unreasonable, harsh, and without justification in law or fact. Therefore, we reverse the trial court's order awarding fees and costs to Noble Village.

*Judgment reversed. Johnson, P. J., and Phipps, J., concur.*

DECIDED JUNE 26, 2008.

*Cook, Hall & Lampros, Christopher B. Hall, Peter A. Lampros*, for appellant.

*Womble, Carlyle, Sandridge & Rice, Kelly A. Lee*, for appellee.